TROY LAW, PLLC
John Troy (JT 0481)
Aaron Schweitzer (AS 6369)
41-25 Kissena Boulevard Suite 103
Flushing, NY 11355
Tel: (718) 762-1324
*Attorney for the Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT COURT OF NEW YORK**
-----------------------------------------------------------------x

SHELLA RILLORAZA,

                                    Plaintiff,
                         v.

DAISY MAE RHODES, and
REYNALDO OCAMPO

                                    Defendants.
-----------------------------------------------------------------x

**Case No. 21-cv-03305**

**<u>COMPLAINT</u>**

**DEMAND FOR JURY TRIAL**

Plaintiff SHELLA RILLORAZA (hereinafter referred to as Plaintiff), by and through her

attorney, Troy Law, PLLC, hereby brings this complaint against Defendants DAISY MAE

RHODES, and REYNALDO OCAMPO, and alleges as follows:

**<u>INTRODUCTION</u>**

1.      This action is brought by the Plaintiff SHELLA RILLORAZA, on behalf of

herself as well as other employees similarly situated, against the Defendants for alleged

violations of the Fair Labor Standards Act, (FLSA) 29 U.S.C. § 201 *et seq.* and New York

Labor Law (NYLL), arising from Defendants' various willful, malicious, and unlawful

employment policies, patterns and practices.

2.      Upon information and belief, Defendants have willfully, maliciously, and

intentionally committed widespread violations of the FLSA and NYLL by engaging in pattern

and practice of failing to pay Plaintiff, minimum wage for each hour worked and overtime

compensation for all hours worked over forty (40) hours and/or forty four (44) hours for at

least some of the time during Plaintiff's employment with Defendants.

3.      Plaintiff alleges pursuant to the FLSA, that she is entitled to recover from the Defendants: (1) unpaid wages, unpaid minimum wage compensation and unpaid overtime wages, (2) unlawful deductions and kickback from Plaintiffs' wages, and/or breach-of-contract out-of-pocket expenses (3) liquidated damages, (4) prejudgment and post-judgement interest; and or (5) attorney's fees and cost.

4.      Plaintiff further alleges pursuant to NYLL § 650 et seq. and 12 New York Codes, Rules and Regulations § 146 (NYCRR) that she is entitled to recover from the Defendants: (1) unpaid minimum wage compensation and unpaid overtime compensation, (2) unpaid spread-of-hours premium, (3) unlawful deductions and kickback from Plaintiffs' wages, and/or breach-of-contract out-of-pocket expenses, (4) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday, (5) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that accurately and truthfully lists employee's hours along with the employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day, (6) liquidated damages equal to the sum of unpaid minimum wage, unpaid "spread of hours" premium, unpaid overtime in the amount of twenty five percent under NYLL § 190 et seq., § 650 et seq., and one hundred percent after April 9, 2011 under NY Wage Theft Prevention Act, (7) 9% simple prejudgment interest provided by NYLL, (8) post-judgment interest, and (9) attorney's fees and costs.

**JURISDICTION AND VENUE**

5.      This Court has original federal question jurisdiction over this controversy under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331, and has supplemental jurisdiction over the NYLL claims pursuant to 28 U.S.C. § 1367(a).

6.      Venue is proper in the Eastern District Court of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

**PLAINTIFF**

7.      Plaintiff SHELLA RILLORAZA is a resident of Queens.

8.      From on or about August 17, 2020 to February 14, 2021, Plaintiff SHELLA RILLORAZA was employed by Defendants to work as a domestic service worker at 82-23 Eliot Avenue, Middle Village, NY 11374.

9.      Specifically, Plaintiff SHELLA RILLORAZA worked as a domestic worker from August 17, 2020 to October 31, 2020, and Plaintiff SHELLA RILLORAZA worked as a live-in domestic worker from November 01, 2020 to February 14, 2021.

10.     In addition, Plaintiff SHELLA RILLORAZA worked as a domestic worker on April 1, 2021 and April 8, 2021.

11.     During this time, Plaintiff SHELLA RILLORAZA had to accompany Defendants on flights to Florida, and Washington D.C. and help cater to Defendants' family and friends.

**DEFENDANTS**

12.     DAISY MAE RHODES and REYNALDO OCAMPO reside at 82-23 Eliot Avenue, Middle Village, NY 11374.

13.     DAISY MAE RHODES hired Plaintiff.

14.     DAISY MAE RHODES fired Plaintiff.

15.     DAISY MAE RHODES promised to pay and failed to pay Plaintiff.

16.     REYNALDO OCAMPO is the boyfriend and co-habitant of the household at

82-23 Eliot Avenue, Middle Village, NY 11374.

17.     Defendants each had the power to hire and fire Plaintiff RILLORAZA, set wages,

set terms and conditions of employment, as well as the authority to maintain employment records

for Plaintiff RILLORAZA.

18.     DAISY MAE RHODES and REYNALDO OCAMPO acted intentionally and

maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations

promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder and is

jointly and severally liable.

## STATEMENT OF FACTS

19.     Defendants committed the following alleged acts knowingly, intentionally

willfully, and maliciously against the Plaintiff.

20.     At all relevant times, Defendants knowingly, willfully, and maliciously failed

to pay Plaintiff and similarly situated employees at least the New York minimum wage for

each hour worked.

21.     At all relevant times, Defendants knowingly, willfully, and maliciously failed

to pay Plaintiff her lawful overtime compensation of one and one-half times (1.5x) their

regular rate of pay for all hours worked over forty (40) in a given workweek.

22.     While employed by Defendants, Plaintiff was not exempt under federal and

state laws requiring employers to pay employees overtime.

23.     Defendants failed to keep full and accurate records of Plaintiff's hours and wages.

24.     Upon information and belief, Defendants failed to keep full and accurate records in order to mitigate liability for their wage violations. Defendants never furnished any notice of their use of tip credit.

25.     At all relevant times, Defendants knowingly, willfully, and maliciously failed to provide Plaintiff and similarly situated employees with Time of Hire Notice reflecting true rates of pay and payday as well as paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day.

26.     Defendants knew that the nonpayment of overtime pay and New York's "spread of hours" premium for every day in which Plaintiff worked over ten (10) hours would financially injure Plaintiff and similarly situated employees and violate state and federal laws.

27.     Defendants did not post the required New York State Department of Labor posters regarding minimum wage pay rates, overtime pay, tip credit, and pay day.

### *Plaintiff SHELLA RILLORAZA*

28.     From on or about August 17, 2020 to February 24, 2021, Plaintiff SHELLA RILLORAZA was employed by Defendants to work as a live-in domestic service worker at 82-23 Eliot Avenue, Middle Village, NY 11374.

29.     Between August 17, 2020 and August 18, 2020, Plaintiff SHELLA RILLORAZA worked in New York from between 08:00 and 10:30 to midnight (00:00) for around thirteen and a half (13.5) hours the first day and sixteen (16) hours the second day,

with no day off.

30.     Plaintiff's work schedule from August 17, 2020 to August 18, 2020 is as follows:

   a.   10:30: arrive at apartment of Defendants DAISY RHODES and REYNALDO OCAMPO;

   b.   10:30 to 10:45: Steam rice, throw out trash

   c.   10:45 to 11:50: clean bathroom by scrubbing tiles, had to stop to prepare lunch for Defendants

   d.   11:50 to 13:35: set up dining table by placing plates, bowls, utensils, cups, and napkins, reheating food, prepare fruits;

   e.   12:10 to 12:45: eat with Defendants;

   f.   12:45 to 13:35: clean the kitchen, throw out trash, disassemble tables and chairs, wash the dishes, clean oven and microwave;

   g.   13:35 to 13:45: ten-minute break;

   h.   13:45 to 14:10 continue cleaning the bathroom by mopping, vacuuming, wiping counter tops, arranging bathroom towels, replacing trash bags, restocking tissues, and cleaning walls and dusty rusty corners;

   i.   14:10 to 15:20 bring two (2) to three (3) bags of laundry to laundromat, including towels, bath rugs, sheets, bed covers, pillow case, and Comforter, then walk back to the apartment;

   j.   15:00 to 17:00: bring laundry back, fold laundry;

   k.   17:00 to 18:00 prepare dinner;

   l.   18:00 to 18:45 eat dinner with defendants, clean dishes;

m.  18:45 to 23:40 organize wardrobes of Defendants DAISY RHODES and
REYNALDO OCAMPO, stand by for Defendants' request while cleaning;

n.  23:40 Defendants called Uber for Plaintiff to travel home, Plaintiff left at
23:50.

31.  Between August 19, 2020 and September 9, 2020, Plaintiff SHELLA
RILLORAZA worked in Florida from between 08:00 and 09:00 to between 22:00 and
midnight (00:00) for between thirteen (13) hours and sixteen (16) hours per day, with one (1)
day off and one (1) day with break.

32.  Plaintiff's work schedule from August 19, 2020 to September 9, 2020 is as
follows:

a.  9:00 to 9:30: organize the kitchen;

b.  09:30 to 10:30: help prepare breakfast for five (5) children (Defendant
REYNALDO OCAMPO's 2 nieces and 3 nephews), clean the kitchen;

c.  10:30 to 12:00: prepare breakfast for DAISY RHODES and REYNALDO
OCAMPO, cook lunch, set tables; sometimes cooking involves steaming rice,
grilling raw meats and seafood; sometimes get groceries;

d.  12:30 to 13:30: eat lunch, babysit the children;

e.  13:30 to 13:50: dispose of trash bags for both trash and recycling, replace trash
bags;

f.  14:00-18:00 travel to grocery store, get groceries; babysit children after online
school, provide food for children 2-3 times upon their parents' approval, clean
after children in swimming pool, maintain cleanliness of pool area by
disposing paper plates and trash, clean toilets and bathtubs, make beds, do

laundry every 1-2 days, fold laundry, stock pantry and fridge with groceries, vacuum, sweep, and mop floor, wipe countertops, organize living room;

g. 18:00 to 18:10: exercise upon Defendants' permission, approved only three times;

h. 19:00 to 20:30 prepare dinner, set up dining room table, eat dinner with defendants;

i. 20:30 to 24:00 clean the plates, clean up the dining table, throw out trash and recycling again, replace trash bags, play with the children standby for any requests from defendants, sleep at midnight (24:00).

33.      During that time, Defendants and Plaintiff traveled to a resort in Florida from September 5 to September 7, 2020, resulting in a different work schedule.

34.      Plaintiff's work schedule on September 5, 2020 and September 7, 2020 at Treasure Island Resort in Florida is as follows:

a. 9:00 to 9:30: make breakfast for DAISY RHODES, REYNALDO OCAMPO and REYNALDO OCAMPO's relatives;

b. 9:30 to 10:30: help gather and organize Defendants' belongings in preparation for travel;

c. 10:30 to 11:00: help carry the food, luggage, and belongings, into the car to travel to and from resort.

d. 11:00 to 15:00: travel.

e. 15:00 to 15:30 stop to get food and groceries.

f. 15:30 to 18:00 unload luggage from the car, unload food and groceries into the fridge, settle into hotel room or back in Defendant's house by unpacking and

cleaning the residential area.

g.  18:00 to 19:00: babysit the children of Defendant REYNALDO OCAMPO's

relatives;

h.  19:00 to 20:30: eat dinner with Defendants and their relatives;

i.  20:30 to 21:45 clean up after dinner by washing plates and utensils, clean

kitchen and sink, wipe all counter tops;

j.  20:30 to 24:00: Defendants and their relatives stayed by the pool while

Plaintiff clean the kitchen and load dishes in the dishwasher. Plaintiff also

threw out the trash and replaced the trash bags.

35.  During this period of time, Plaintiff had to cater to eleven (11) people.

36.  Between August 17, 2020 and September 6, 2020, Plaintiff worked between

ninety-two (92) and one hundred and five (105) hours a week.

37.  Between September 7, 2020 and September 9, 2020 Plaintiff worked thirty-

three (33) hours for that week.

38.  Between September 10, 2020 and September 27, 2020, Plaintiff SHELLA

RILLORAZA did not work.

39.  Between September 28 and October 4, 2020, Plaintiff SHELLA RILLORAZA

worked between 08:00 and 10:00 to between midnight and 06:30 the next day, for between

fourteen (14) and twenty-one and a half (21.5) hours with no break, and with no day off.

40.  Plaintiff's work schedule from September 28, 2020 to October 4, 2020 is as

follows:

a.  9:00 to 9:30: prepare breakfast;

b.  9:30 to 11:30 clean apartment, including organizing the refrigerator and

cleaning bathrooms;

c.  11:30 to 12:00 prepare brunch for DAISY RHODES and REYNALDO OCAMPO, wash the dishes, sweep the floor;

d.  12:00 to 13:00: clean the entire kitchen;

e.  13:00 to 14:30: wash and dry laundry;

f.  14:30 to 15:30 fold laundry;

g.  15:30 to 16:00 clean and dust the room of DAISY RHODES and REYNALDO OCAMPO, replace sheets;

h.  16:00 to 16:30: buy groceries from store two (2) blocks away

i.  16:30 to 18:00 organize groceries, cook dinner

j.  18:00 to 18:45: set up dinner table, eat dinner with defendants;

k.  18:45 to 19:45: wash dishes, throw out trash;

l.  19:45 to 24:00: standby for requests from defendants, such as getting snacks from the grocery store, boiling water and making tea for Defendants, getting medicine for Defendants, sleep at midnight (24:00).

m.  In addition to the above schedule, Plaintiff accompanied Defendants to the casino from midnight to 06:00 on September 28, 2020;

n.  In addition to the above schedule, Plaintiff accompanied Defendants to the casino from 22:00 to 03:00 on October 1 2020.

41.  On or about October 7, 2020, October 10, 2020 and October 12, 2020, Plaintiff worked from between 09:00 and 10:00 to between 20:30 and midnight for between eleven and a half (11.5) hours and fifteen (15) hours with no break.

42.  Plaintiff's work schedule on October 7, 2020, October 10, 2020 and October

12, 2020 is as follows:

    a.  9:00 to 9:30: prepare breakfast for DAISY RHODES and REYNALDO OCAMPO;

    b.  9:30 to 11:30 clean apartment, including organizing the refrigerator, taking out expired foods, and thawing frozen food for lunch and dinner.

    c.  11:30 to 12:00 prepare lunch for DAISY RHODES and REYNALDO OCAMPO, wash the dishes, sweep the floor;

    d.  12:00 to 13:00: clean the entire kitchen;

    e.  13:00 to 14:30: wash and dry laundry;

    f.  14:30 to 15:30 fold laundry;

    g.  15:30 to 16:00 clean and dust the room of DAISY RHODES and REYNALDO OCAMPO, replace sheets;

    h.  16:00 to 16:30: buy groceries from store two (2) blocks away

    i.  16:30 to 18:00 organize groceries, cook dinner

    j.  18:00 to 18:30: set up dinner table, eat dinner with defendants;

    k.  18:45 to 19:45: wash dishes, throw out trash;

    l.  19:45 to 24:00: standby for requests from defendants, such as getting snacks from the grocery store, boiling water and making tea for Defendants, getting medicine for Defendants, sleep at midnight (24:00).

43.    Between October 13, 2020 and October 31, 2020, Plaintiff SHELLA RILLORAZA did not work.

44.    Between November 1, 2020 and December 1, 2020, Plaintiff SHELLA RILLORAZA worked from between 09:00 and 10:00 to midnight for fourteen (14) and fifteen

(15) hours Mondays through Fridays for fourteen (14) to fifteen (15) hours a day, between

seventy (70) and seventy-five (75) hours each week.

45.     Plaintiff's work schedule from November 1, 2020 to December 1, 2020 is as

follows:

     a.  9:00 to 9:30: prepare breakfast;

     b.  9:30 to 11:30 clean apartment, including organizing the refrigerator and

        cleaning bathrooms;

     c.  11:30 to 12:00 prepare lunch for DAISY RHODES and REYNALDO

        OCAMPO, wash the dishes, sweep the floor;

     d.  12:00 to 13:00: clean the entire kitchen;

     e.  13:00 to 14:30: wash and dry laundry;

     f.  14:30 to 15:30 fold laundry;

     g.  15:30 to 16:00 clean and dust the room of DAISY RHODES and REYNALDO

        OCAMPO, replace sheets;

     h.  16:00 to 16:30: buy groceries from store two (2) blocks away

     i.  16:30 to 18:00 organize groceries, cook dinner

     j.  18:00 to 18:30: set up dinner table, eat dinner with defendants;

     k.  18:45 to 19:45: wash dishes, throw out trash;

     l.  19:45 to 24:00: standby for requests from defendants, such as getting snacks

        from the grocery store, boiling water and making tea for Defendants, getting

        medicine for Defendants, before going to bed at midnight (24:00).

46.     Between December 2, 2020 and December 23, 2020, Plaintiff SHELLA

RILLORAZA worked for around nine (9) hours each day between 9:30 and 22:00 to do

chores, Mondays through Fridays for forty five (45) hours each week.

47.    Plaintiff's work schedule from December 2, 2020 to December 23, 2020 is as follows:

    a.  10:00 to 11:30 clean apartment, including organizing the refrigerator and cleaning bathrooms;

    b.  11:30 to 12:00 prepare lunch for DAISY RHODES and REYNALDO OCAMPO, wash the dishes, sweep the floor;

    c.  12:00 to 13:00: clean the entire kitchen;

    d.  13:00-16:00 Wipe ceilings, vent, and clean mold from curtains, bleach counters and backwash of kitchen, including exterior cabinets;

    e.  16:00 to 16:30: buy groceries from store two (2) blocks away

    f.  16:30 to 18:00 organize groceries, cook dinner

    g.  18:00 to 18:45: set up dinner table, eat dinner with defendants;

    h.  18:45 to 19:45: wash dishes, throw out trash;

    i.  19:45 to 22:00: standby for requests from defendants, such as getting snacks from the grocery store, boiling water and making tea for Defendants, getting medicine for Defendants, before going to bed at 22:00.

48.    Between December 24, 2020 and January 7, 2021, Plaintiff SHELLA RILLORAZA did not work.

49.    Between January 8, 2021 and February 14, 2021, Plaintiff SHELLA RILLORAZA worked for between five (5) and six (6) hours during the interval of 10:00 to 22:00 for five (5) days a week and between twenty-seven (27) to thirty-three (33) hours each week.

50.     Plaintiff's work schedule from January 8, 2021 to February 14, 2021 is as follows:

     a.   10:00 to 11:30 clean apartment, including organizing the refrigerator and cleaning bathrooms;

     b.   11:30 to 12:00 prepare lunch for DAISY RHODES and REYNALDO OCAMPO, wash the dishes, sweep the floor;

     c.   12:00 to 13:00: clean the entire kitchen;

     d.   13:00 to 16:00 Wipe ceilings, vent, and clean mold from curtains, bleach counters and backwash of kitchen, including exterior cabinets;

     e.   16:00 to 16:30: buy groceries from store two (2) blocks away

     f.   16:30 to 18:00 organize groceries, cook dinner

     g.   18:00 to 18:30: set up dinner table, eat dinner with defendants;

     h.   18:30 to 19:30: wash dishes, throw out trash.

51.     In addition, on some days during Plaintiff's employment with Defendants, Defendants DAISY RHODES or REYNALDO OCAMPO would request Plaintiff to accompany them when traveling to Long Island or upstate New York for work.

     a.   Plaintiff SHELLA RILLORAZA leaves with Defendants at as early as 6:00;

     b.   The drive would take around four (4) hours each way.

     c.   This occurred around ten (10) times throughout Plaintiff SHELLA RILLORAZA's employment.

52.     On April 1, 2021, and April 8, 2021 Defendant DAISY RHODES called Plaintiff SHELLA RILLORAZA over to help out with house chores for a total of four (4) hours.

53.     On those two days, Plaintiff SHELLA RILLORAZA's chores included shopping at Home Depot, lifting a sofa into the Defendants' apartment, and organizing the Defendants' closet.

54.     At all relevant times, Plaintiff SHELLA RILLORAZA did not have a fixed time for lunch or for dinner.

55.     From on or about August 17, 2020 to February 14, 2021, Plaintiff SHELLA RILLORAZA was paid a flat compensation at a rate of four hundred dollars ($400.00) to work five (5) days.

56.     Plaintiff SHELLA RILLORAZA was promised an additional one hundred dollars ($100) per day if she worked more than five (5) days.

57.     Plaintiff SHELLA RILLORAZA was also promised a daily rate of One Hundred Dollars ($100) if she worked three (3) or less days during that week.

58.     At the time, Plaintiff SHELLA RILLORAZA agreed to the arrangement because the residence was a small house and she was told that she only needed to cater to two people, namely Defendants.

59.     Plaintiff was paid Four Hundred Dollars ($400) for five (5) days of work during her first week of employment from August 17, 2020 to August 21, 2020.

60.     Plaintiff was not paid for two (2) days of work from August 22, 2020 to August 23, 2020, which should have been Two Hundred Dollars ($200).

61.     Plaintiff was paid Six Hundred Dollars ($600) for seven (7) days of work during her second week of employment form August 24, 2020 to August 30, 2020.

62.     Plaintiff was paid Five Hundred Dollars ($500) for six (6) days of work during her third week of employment from August 31, 2020 to September 6, 2020.

63.     Plaintiff was paid Three Hundred Dollars ($300) for three (3) days of work during her third week of employment from September 7, 2020 to September 9, 2020.

64.     Thereafter, Plaintiff was not paid.

65.     The reason proffered for the nonpayment was that Defendant DAISY MAE RHODES had her multiple bank accounts closed down by the Internal Revenue Service after an audit of huge and suspicious transactions, direct bank transfers and "paluwagans," and tax evasions. As a result, Defendant DAISY MAE RHODES was banned from Bank of America and money transferring apps, including PayPal, the Cash App, Venmo, Zelle.

66.     At all relevant times, Plaintiff SHELLA RILLORAZA was not paid overtime pay for overtime work.

67.     Throughout her employment, Plaintiff SHELLA RILLORAZA was not given a statement with her weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Filipino, Plaintiff's native language.

68.     Throughout her employment, Plaintiff SHELLA RILLORAZA was not compensated at least at one-and-one-half her promised hourly wage for all hours worked above forty (40) in each workweek.

69.     Throughout her employment, Plaintiff SHELLA RILLORAZA was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at her promised rate.

70.     As part of Plaintiff's employment with Defendants, Plaintiff SHELLA RILLORAZA was required to bear the cost of delivery orders to the house by Doordash, car

rides by Lyft and Uber, grocery deliveries from Sariling Atin, cleaning supplies such as Oxyclean, Candle and Chlorox.

71.     Plaintiff was also coerced to invest in multi-level marketing schemes *sou-sou* by Defendants with the promise from Defendants that she would get her money back.

72.     Defendant DAISY MAE RHODES was the administrator of a multi-marketing level scheme "sou-sou," which promised a return of $4,000 in 21 days to a month in return for a $500 investment.

73.     Defendant DAISY MAE RHODES coerced Plaintiff to personally put in $1000 through the Zelle transaction to an individual named JUBERT PAUL, and promised to pay Plaintiff back her one thousand dollars. However, Plaintiff never got her investment back.

74.     In addition to this investment, Defendant DAISY MAE RHODES has a client/ friend named MARISSA who Defendant represented was a nurse and needed $2500. Defendant DAISY MAE RHODES promised that if MARISSA doesn't pay back, that Defendant will pay Plaintiff back. However, only $500 was paid of the $2500 loan.

75.     On October 30, 2020, Plaintiff transferred $120 at Defendant DAISY MAE RHODES's bequest to Shanelli Feliciano. This amount was not paid back despite Defendant Defendant DAISY MAE RHODES's promise to pay her back.

76.     On November 1, 2020, Plaintiff transferred $376 at Daisy's bequest to the number 17026376002 via Zelle. This amount was not paid back despite Defendant Defendant DAISY MAE RHODES's promise to pay her back.

77.     On November 1, 2020, Plaintiff transferred $126 at Daisy's bequest to Kristel Roxas (14695142204). This amount was not paid back despite Defendant DAISY MAE RHODES's promise to pay her back.

78.     On November 15, 2020, Plaintiff lent $485 in cash at Daisy's bequest to Candy. This amount was not paid back despite Defendant DAISY MAE RHODES's promise to pay her back.

79.     On December 14, 2020, Plaintiff transferred $500 at Daisy's bequest to Daylen. This amount was not paid back despite Defendant DAISY MAE RHODES's promise to pay her back.

## STATEMENT OF CLAIMS

### COUNT I.
### [Violations of the Fair Labor Standards Act—Failure to Pay Minimum Wage Compensation and Unpaid Wages]

80.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

81.     At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiff in full for some or all of the hours she worked.

82.     The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 206 shall be liable to the employees affected in the amount of their unpaid wage, and in an additional equal amount as liquidated damages.

83.     Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by failing to compensate Plaintiff at the statutory minimum wage when they knew or should have known such was due and that failing to do so would financially injure Plaintiff.

### COUNT II.
### [Violation of New York Labor Law—Failure to Pay Minimum Wage/ Unpaid Wages]

84.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

85.     At all relevant times, Plaintiff was employed by Defendants within the meaning of New York Labor Law §§ 2 and 651.

86.     At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiff in full for some or all of the hours she worked.

87.     Defendants knowingly and willfully violated Plaintiff's rights by failing to pay her minimum wages in the lawful amount for hours worked.

88.     An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty-five percent (25%) of the shortfall under NYLL §§ 190 *et seq.*, §§ 650 *et seq.*, and one hundred percent (100%) after April 9, 2011 under NY Wage Theft Prevention Act, and interest.

## COUNT III.
### [Violations of the Fair Labor Standards Act—Failure to Pay Overtime]

89.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

90.     The FLSA provides that no employer engaged in commerce shall employ a domestic worker for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which she is employed, or one and one-half times the minimum wage, whichever is greater. 29 U.S.C. § 207(a).

91.     The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC § 216(b).

92.     Defendants' failure to pay Plaintiff overtime violated the FLSA.

93.     At all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiff for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate

the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

94.     The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. § 516.4.

95.     Defendants willfully failed to notify Plaintiff of the requirements of the employment laws in order to facilitate their exploitation of Plaintiff's labor.

**COUNT IV.**
**[Violation of New York Labor Law—Failure to Pay Overtime]**

96.     The NYLL provides that no employer shall employ a domestic worker for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which she is employed, or one and one-half times the minimum wage, whichever is greater.

97.     The NYLL provides that no employer shall employ a live-in domestic worker for a work week longer than forty-four (44) hours unless such employee receives compensation for employment in excess of forty-four (44) hours at a rate not less than one and one-half times the regular rate at which she is employed, or one and one-half times the minimum wage, whichever is greater.

98.     An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty-five percent (25%) before April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act, and interest.

99.     At all relevant times, Defendants had a policy and practice of refusing to pay the overtime compensation to Plaintiff at one and one-half times the hourly rate the Plaintiff was entitled to.

100.     Defendant' failure to pay Plaintiff her overtime pay violated the NYLL.

101.    Defendants' failure to pay Plaintiff was not in good faith.

## COUNT V.
### [Violation of New York Labor Law—Spread of Time Pay]

102.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

103.    The NYLL requires employers to pay an extra hour's pay for every day that an employee works an interval in excess of ten hours pursuant to NYLL §§ 190, *et seq.*, and §§ 650, *et seq.*, and New York State Department of Labor regulations § 146-1.6.

104.    Defendants' failure to pay Plaintiff spread-of-hours pay was not in good faith.

## COUNT VI.
### [Violation of New York Labor Law—Failure to Provide Time of Hire Wage Notice]

105.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

106.    The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.  NYLL §195-1(a).

107.    Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on their or her first day of employment.

108.    Defendants not only did not provide notice to each employee at Time of Hire,

but failed to provide notice to Plaintiff even after the fact.

109.    Due to Defendants' violations of New York Labor Law, Plaintiff is entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

## COUNT VII.
### [Violation of New York Labor Law—Failure to Provide Wage Statements]

110.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

111.    The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL § 195-1(d).

112.    Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff, and did not provide the paystub on or after each Plaintiffs' payday.

113.    Due to Defendants' violations of New York Labor Law, Plaintiff is entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-d).

## COUNT VIII.
### [Breach of Express and Implied Contract for Reimbursement of all Costs and Expenses of Domestic Spending]

114.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

115.    Throughout the relevant period, Defendants required Plaintiff to bear many of the "out-of-pocket" costs associated with domestic spending such as food delivery, cleaning supplies, and Lyft rides for the Defendant.

116.    Based on his personal experience and available information, Plaintiff can document actual "out-of-pocket" expenses through Lyft receipts and Zelle transfer history.

117.    The conduct of Defendants, and the course of Defendant's conduct between the parties, evidenced an intent for Plaintiff.

118.    Plaintiff called Lyft rides and bought cleaning supplies at her own expense.

119.    Defendants on multiple occasions, confirmed verbally and via text message that they would reimburse Plaintiff for the supplies necessary for the apartment.

120.    As a result of the afore-alleged conduct of the parties, an implied contract arose between them the terms of which are that Plaintiff would incur the expenses of domestic spending, in exchange for compensation from Defendants for such expenses.

121.    Defendants never compensated Plaintiff for any expenses incurred from Lyft rides and buying cleaning supplies. As a result, Defendants breached the implied contract by failing and refusing to pay Plaintiff a reasonable sum under the afore-alleged facts.

122.    Defendants owe Plaintiff her overdue costs of Lyft rides and purchase of cleaning supplies.

## COUNT IX.
### [New York State Unlawful Kick Back Violation]

123.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

124.    Defendants intentionally required Plaintiff to transfer money to multiple associates of Defendants, as stated in Statement of Facts. This violates New York Labor Law § 198-b.

125.    Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to the compensation of Plaintiff.

126.     Due to Defendants' violation of New York Labor Law, Plaintiff is entitled to recover from Defendants, jointly and severally, her unpaid wages, and liquidated damages as well as reasonable attorneys' fees and costs all in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment providing the following relief:

a)     A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

b)     An injunction against Corporate Defendants, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

c)     An award of unpaid minimum wage and overtime wages due under FLSA and New York Labor Law due Plaintiff plus compensatory and liquidated damages in the amount of twenty five percent (25%) prior to April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act;

d)     An award of out-of-pocket breach-of-contract costs for domestic expenses incurred and expended by Plaintiff on Defendants' bequest and behalf;

e)     An award of illegal kickbacks by Defendants from Plaintiff to third parties,

f)     An award of liquidated and/or punitive damages as a result of Defendants' knowing, willful, and malicious failure to pay wages at least the hourly minimum wage, overtime compensation pursuant to 29 U.S.C. §216;

g)     Five thousand dollars ($5,000) for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday;

h)      Five thousand dollars ($5,000) for Defendants' failure to provide a paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day;

i)      An award of liquidated and/or punitive damages as a result of Defendants' willful and malicious failure to overtime compensation, and "spread of hours" premium pursuant to New York Labor Law;

j)      An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

k)      The cost and disbursements of this action;

l)      An award of prejudgment and post-judgment fees;

m)     Providing that if any amounts remain unpaid upon the expiration of ninety days following the issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL §198(4); and

n)      Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) and 38(c) of the Federal Rules of Civil Procedures, Plaintiffs demand a trial by jury on all questions of facts.

Dated: Flushing, New York
June 11, 2021                            TROY LAW, PLLC
                                        *Attorneys for the Plaintiff*
                                        /s/ John Troy
                                        John Troy (JT0481)
                                        Aaron Schweitzer (AS 6369)