UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

SHELLA RILLORAZA,                                  :
                                                   :
                        Plaintiff,                 :
                                                   :          REPORT AND
        -against-                                  :          RECOMMENDATION
                                                   :
                                                   :          No. 21-CV-3305-PKC-JRC
DAISY MAE RHODES, and REYNALDO OCAMPO,             :
                                                   :
                        Defendants.                :
                                                   :
------------------------------------------------------------------- x

JAMES R. CHO, United States Magistrate Judge:

On June 11, 2021, plaintiff Shella Rilloraza ("plaintiff") commenced this action against

defendants Daisy Mae Rhodes ("Rhodes") and Reynaldo Ocampo ("Ocampo") (collectively,

"defendants"), alleging, *inter alia*, violations of the Fair Labor Standards Act ("FLSA"), 29

U.S.C. §§ 201 *et seq*., and the New York Labor Law ("NYLL") § 650 *et seq*., and breach of

contract.  *See generally* Dkt. 1 ("Compl.").  On December 21, 2021, plaintiff filed an Amended

Complaint.  *See* Dkt. 13 ("Am. Compl.").  Upon plaintiff's application and in light of

defendants' failure to appear in or otherwise defend this action, the Clerk of the Court entered

defendants' default on March 30, 2022.  *See* Dkt. 17.

Plaintiff now moves for default judgment and seeks unpaid minimum and overtime

wages, spread of hours premiums, statutory penalties, liquidated damages, pre- and post-

judgment interest, attorney's fees, and costs.  *See* Notice of Motion for Default Judgment, Dkt.

30, and accompanying Memorandum of Law, Dkt. 32 ("Default Mem."); *see also* Affidavit of

Plaintiff in Support of Mot. for Default J., Dkt. 31-9 ("Pl.'s Aff."); Declaration of John Troy in

Support of Mot. for Default J., Dkt. 31 ("Troy Decl."); Notice of Motion for Attorney's Fees and

Costs, Dkt. 33 ("Mot. for Fees"), and accompanying Memorandum of Law, Dkt. 35 ("Fee Mem."); *see also* Declaration of John Troy in Support of Mot. for Attorney's Fees, Dkt. 34 ("Troy Fee Decl.").

Currently pending before this Court, on a referral from the Honorable Pamela K. Chen, are plaintiff's Motion for Default Judgment and Motion for Attorney's Fees and Costs.  *See* Order Referring Motions dated November 22, 2022.  For the reasons set forth below, this Court respectfully recommends granting in part and denying in part plaintiff's Motion for Default Judgment and Motion for Attorney's Fees and Costs.

## I.    Background

The following facts are drawn from plaintiff's Amended Complaint and Affidavit in Support of plaintiff's Motion for Default Judgment.  Supporting declarations are accepted as true for purposes of this motion.

### A.    Factual Background

Rhodes and Ocampo reside at 82-23 Eliot Avenue, Middle Village, New York 11374. Am. Compl. ¶ 12.  Plaintiff worked as a domestic service worker for defendants from August 17, 2020 through February 14, 2021, and again from April 24, 2021 through April 25, 2021.  Pl.'s Aff. ¶ 3.  Plaintiff's supporting affidavit provides a detailed itinerary of the hours she worked, summarized below.[1]  *See id.* ¶¶ 8–34.

---

[1] Where the affidavit deviates from the allegations set forth in the Amended Complaint and Memorandum in Support of Motion for Default Judgment, this Court relies on the facts stated in plaintiff's detailed affidavit.  *See Angamarca v. Pita Grill 7 Inc.*, No. 11 Civ. 7777, 2012 WL 3578781, at *1 (S.D.N.Y. Aug. 2, 2012) (crediting sworn affidavit and more detailed portions of complaint over other portions and filings).  The Court also awards damages, *infra*, based, in part, on the Court's own calculations relying on the facts stated in plaintiff's affidavit.  *See Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, No. 14-CV-10234, 2016 WL 4704917, at *5 (S.D.N.Y. Sept. 8, 2016), *report and recommendation adopted*, 2016 WL 6879258 (S.D.N.Y. Nov. 21, 2016) ("A

From August 17, 2020 to August 18, 2020, plaintiff worked from 10:30 a.m. until 12:00 a.m. the next day. *Id*. ¶ 8. From August 19, 2020 to September 9, 2020, plaintiff traveled to Florida with defendants, where she worked from 9:00 a.m. to 12:00 a.m. the next day with one day off. *Id.* ¶ 10. After returning from Florida, plaintiff did not work from September 10, 2020 to September 27, 2020. *Id*. ¶ 14.

From September 28, 2020 to October 4, 2020, plaintiff traveled to Washington, D.C. with defendants, where she worked from 9:00 a.m. until at least 12:00 a.m. the next day. *Id.* ¶ 15. On two of those days, she worked until 3:00 a.m. the next day and 6:30 a.m. the next day. *Id*. ¶ 16. On October 7, 10, and 12 of 2020, plaintiff worked from 9:00 a.m. until 12:00 a.m. the next day. *Id.* ¶ 19. Plaintiff did not work between October 13, 2020 and October 29, 2020. *Id*. ¶ 21.

Between October 30, 2020[2] and December 1, 2020, plaintiff worked Mondays through Fridays from 9:00 a.m. until 12:00 a.m. the next day. *Id*. ¶ 22. Between December 2, 2020 and December 23, 2020, she worked Mondays through Fridays from 10:00 a.m. until 10:00 p.m. *Id.* ¶ 24.

Plaintiff did not work between December 24, 2020 through January 13, 2021 (with the exception of January 11, 2021, on which she worked five hours). *Id*. ¶¶ 26–27.

Between January 14, 2021 and January 24, 2021, plaintiff worked Mondays through Fridays from 10:00 a.m. until 7:30 p.m. for nine and a half hours per day. *Id.* ¶ 28. After January 24, 2021, plaintiff worked for defendants sporadically. *Id*. ¶¶ 30–33. Specifically, on February 8, 2021 and February 12, 2021, plaintiff worked six hours each day. *Id.* ¶ 31. On February 15, 2021 and February 21, 2021, plaintiff worked a total of six hours over the two days.

---

sworn declaration from plaintiff may provide a sufficient basis for the Court to determine damages.").

[2] Plaintiff started residing with defendants on or about November 1, 2020. Pl.'s Aff. ¶ 4.

*Id.* ¶ 32.  On February 24, 2021, plaintiff terminated her employment and moved out of defendants' home.  *Id*. ¶ 33.  Plaintiff returned on April 24, 2021 and April 25, 2021, and worked a total of five hours over the two-day period.  *Id.* ¶ 34.

Defendants paid plaintiff $400 for her first five days of work from August 17, 2020 to August 21, 2020.  *Id.* ¶ 37.  Defendants then paid plaintiff $600 for seven days of work from August 24, 2020 to August 30, 2020.  *Id.* ¶ 39.  Defendants paid plaintiff $500 for six days of work from August 31, 2020 to September 6, 2020, and $300 for three days of work from September 7, 2020 to September 9, 2020.  *Id.* ¶¶ 40–41.  Plaintiff was not paid for her work following September 9, 2020.  *Id.* ¶ 42.  She never received weekly wage statements setting forth, among other things, plaintiff's gross wages, any deductions from plaintiff's gross wages, or net wages.  *Id.* ¶ 49.

**B.    Procedural History**

Plaintiff alleges defendants violated the FLSA and NYLL.  She worked for weeks at a time without being paid, and when payments were received, she did not receive the statutory minimum wage, overtime compensation, or a spread-of-hours premium.  *See* Am. Compl. ¶¶ 15, 20–21, 26.  Plaintiff further alleges she was not given proper wage statements during the period in which she worked, nor was she given a Time of Hire Notice.  *Id.* ¶¶ 25, 27.

On June 11, 2021, plaintiff timely commenced this action[3] by filing her original complaint. *See* Compl. Defendants were served on August 8, 2021.[4] *See* Dkts. 8, 9. On November 23, 2021, plaintiff filed an Amended Complaint. *See* Dkt. 11. On December 20, 2021, plaintiff's Amended Complaint was rejected for failing to seek leave of Court per Rule 15 of the Federal Rules of Civil Procedure, and plaintiff was granted leave to re-file. *See* Minute Entry dated December 20, 2021. On December 21, 2021, plaintiff refiled her Amended Complaint alleging, *inter alia*, violations of the FLSA, NYLL, and breach of contract. *See* Am. Compl. ¶¶ 79–125.

Defendants were served with the Amended Complaint on January 19, 2022. *See* Dkts. 14, 15. Defendants have failed to answer the Amended Complaint or otherwise appear in this case. On March 30, 2022, the Clerk entered a Certificate of Default as to both defendants. *See*

---

[3] The NYLL has a six-year statute of limitations, *see* N.Y. Lab. Law § 663(3), and the FLSA has a two-year statute of limitations, *see* 29 U.S.C. § 255(a), unless the plaintiff shows that the employer's actions were willful, in which case the limitations period extends to three years. *See id*. Plaintiff alleges that defendants willfully violated both the FLSA and the NYLL. *See* Am. Compl. ¶¶ 20, 21, 25. "Generally, courts have found that a defendant's default establishes willfulness." *Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695, 2015 WL 1529653, at *6 (E.D.N.Y. Mar. 31, 2015) (citing *Hernandez v. PKL Corp.*, No. 12-CV-2276, 2013 WL 5129815, at *2 (E.D.N.Y. Sept. 12, 2013)); *see also Suarez Castaneda v. F&R Cleaning Servs. Corp.*, No. 17-CV-7603, 2019 WL 5694118, at *7 (E.D.N.Y. Mar. 15, 2019), *report and recommendation adopted*, 2019 WL 5693768 (E.D.N.Y. July 8, 2019) ("The three-year statute of limitations period applies here because defendants' default itself establishes willfulness."); *Rodriguez v. Queens Convenience Deli Corp.*, No. 09-CV-1089, 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011)) ("In the present case, defendants defaulted, and therefore the three-year statute of limitations applies."). Here, defendants have not responded to the Amended Complaint despite proper service. Plaintiff also submitted affidavits of service confirming that the defendants were provided notice of the motion for default judgment. Defendants have nonetheless failed to respond to plaintiff's motion for default judgment or to otherwise appear in this action. Accordingly, defendants' failure to respond to the Amended Complaint or the instant motion demonstrates that their default was willful, and this Court applies the three-year limitations period for the FLSA violations.

[4] Based on the affidavits of service, this Court finds that plaintiff properly served defendants in accordance with Fed. R. Civ. P. Rule 4(e).

Dkt. 17. On June 7, 2022, plaintiff moved for default judgment and attorney's fees. *See* Dkts. 19–24. On October 21, 2022, plaintiff's motion for default judgment was denied with leave to refile for failing to file with the motion "a copy of the claim to which no response has been made" pursuant to Local Civil Rule 55.2(b). On November 21, 2022, plaintiff moved again for default judgment and attorney's fees. *See* Dkts. 30–36. On April 12, 2023, plaintiff filed a supplemental letter addressing whether both individual defendants were plaintiff's employers under applicable law. *See* Dkt. 40.

## II.    Discussion

### A.    Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure governs motions for default judgment. The Rule sets forth a two-step process for entry of a default judgment. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993). First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case. *See id.*; *see also* Fed R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default"). This first step is nondiscretionary. *See United States v. Conolly*, 694 F. App'x 10, 12 (2d Cir. 2017). Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the plaintiff may apply to the court for a default judgment. *See* Fed. R. Civ. P. 55(a), (b)(2).

Here, on March 30, 2022, the Clerk of the Court entered a default against defendants after they failed to respond to the Amended Complaint. *See* Dkt. 17. To date, defendants have not appeared or moved to vacate the entry of default.

6

If a defendant defaults and the plaintiff moves for default judgment, a court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (citation omitted). Additionally, "a party's default is deemed to constitute a concession of all well pleaded allegations of liability." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).

Nevertheless, a default does not establish "that the alleged facts constitute a valid cause of action." *TAGC Mgmt., LLC v. Lehman, Lee & Xu Ltd.*, 536 F. App'x 45, 46 (2d Cir. 2013) (internal quotation marks and citation omitted). A pleading's legal conclusions are not assumed to be true, and, on a motion for default judgment, the factual allegations in the complaint must themselves be sufficient to establish a right to relief. *See Romanowicz*, 577 F.3d at 84 (district court is "required to determine whether the [plaintiff's] allegations establish [defendant's] liability as a matter of law"); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) ("A district court . . . need not agree that the alleged facts constitute a valid cause of action."). "Thus, a defendant's default does no more than concede the complaint's well-pleaded factual allegations; it remains the plaintiffs' burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Mateo v. Universal Language Corp.*, No. 13-CV-2495, 2015 WL 5655689, at *4 (E.D.N.Y. Sept. 4, 2015), *report and recommendation adopted*, 2015 WL 5664498 (E.D.N.Y. Sept. 24, 2015). "If the elements of the claim are established by the complaint's factual allegations, the defendant's default establishes its liability." *L.G. Cap. Funding, LLC v. Wowio, Inc.*, No. 16-CV-6632, 2018 WL 3202077, at *8 (E.D.N.Y. Apr. 24, 2018) (citation omitted).

As explained below, this Court finds that plaintiff's well-pleaded allegations in her Amended Complaint establish liability as to Rhodes and Ocampo for violations of both the FLSA and NYLL and for breach of contract, but the Court finds plaintiff has not established kick-back violations under NYLL § 198-b.

### B.      FLSA

"The FLSA governs minimum wages, maximum hours, and other policies and practices affecting employees and employers." *Thompson v. Hyun Suk Park*, No. 18-CV-0006, 2019 WL 1299194, at *2 (E.D.N.Y. Mar. 5, 2019), *report and recommendation adopted*, 2019 WL 1298563 (E.D.N.Y. Mar. 20, 2019); *see also Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 224 (2014).  To demonstrate entitlement to wage and overtime protections under the FLSA, a plaintiff must show that (1) an employer-employee relationship exists, and (2) the employment falls under the FLSA's individual or enterprise coverage provisions.  *See Baizan Guerrero v. 79th St. Gourmet & Deli Inc.*, No. 18-CV-4761, 2019 WL 4889591, at *4 (E.D.N.Y. Sept. 10, 2019), *report and recommendation adopted*, 2019 WL 4887914 (E.D.N.Y. Oct. 3, 2019); *see also* 29 U.S.C. § 206(a)(1) (providing for minimum wages for qualifying employees); *id.* § 207(a)(1) (providing for overtime wages for qualifying employees).

The FLSA broadly defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and a "person" as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons," *id.* § 203(a).  The FLSA further defines the term "employee" as "any individual employed by an employer."  *Id.* § 203(e)(1).  "Because the statute defines employer in such broad terms, it offers little guidance on whether a given individual is or is not an employer."  *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).

There is "no rigid rule for the identification of an FLSA employer." *Teri v. Spinelli*, 980 F. Supp. 2d 366, 374 (E.D.N.Y. 2013) (citing *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 143 (2d Cir. 2008)). Rather, the touchstone in determining whether an individual is an employer is "operational control" over employees, meaning whether the individual exercises control over and makes decisions that "directly affect the nature or conditions of the employees' employment." *Irizarry v. Catsimatidis*, 722 F.3d 99, 110 (2d Cir. 2013). Thus, to determine whether a party qualifies as an "employer" under the FLSA, "the overarching concern" that courts consider is "whether the alleged employer possessed the power to control the workers in question, with an eye to the 'economic reality' presented by the facts of each case." *Herman*, 172 F.3d at 139 (citing *Goldberg v. Whitaker House Coop.*, 366 U.S. 28, 33 (1961)) (internal citation omitted); *see Guerrero*, 2019 WL 4889591, at *4.

When examining the "economic reality" of a particular situation, the following factors are relevant: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Irizarry*, 722 F.3d at 104–05 (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)). Despite these enumerated factors, however, a district court should consider any factor relevant to its assessment of the economic realities of an employer-employee relationship. *See Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71–72 (2d Cir. 2003).

Plaintiff's unopposed allegations are sufficient to show that defendants employed plaintiff under the definition of the FLSA and that she is entitled to its protections. Plaintiff worked as a live-in maid at the residence for both Rhodes and Ocampo. Am. Compl. ¶ 28. At all relevant times, she performed domestic services for both defendants. Plaintiff alleges that

9

both defendants had the power to hire and fire her, set wages, set terms and conditions of employment, and create and maintain employment records. *See* Am. Compl. ¶ 17. Plaintiff avers defendants had control over her work schedule and conditions by, for example, ending plaintiff's shift by calling her an Uber home, *see id.* ¶ 33(n), and keeping plaintiff on "standby" for requests, *see id.* ¶¶ 35(i), 44(l), 46(l), 49(l), 51(i). Further, both defendants assigned plaintiff tasks throughout the day. *See id.* ¶¶ 37, 44, 46, 49, 51, 54. Plaintiff also alleges defendants determined the rate and method of payment by promising and failing to pay plaintiff at a set rate, *see id.* ¶¶ 15, 69, and that Rhodes hired and fired plaintiff, *id.* ¶¶ 13–14.

Thus, plaintiff sufficiently demonstrates that defendants employed her under the FLSA. *See Irizarry*, 722 F.3d at 104–05; *see also Sarmiento Perez v. Comhar Grp., LLC*, No. 19-CV-0964, 2020 WL 1364908, at *3–*4 (E.D.N.Y. Mar. 6, 2020), *report and recommendation adopted*, 2020 WL 1332200 (E.D.N.Y. Mar. 23, 2020) (finding that defendants employed plaintiffs because they "had authority to hire and fire him and to control his working conditions and compensation"). Further, plaintiff's allegations adequately demonstrate that defendants employed her jointly. *See Shim v. Millennium Grp.*, No. 08-CV-4022, 2010 WL 409949, at *2 (E.D.N.Y. Jan. 27, 2010) (imposing joint and several liability under FLSA where complaint contained allegations of actions taken collectively by multiple defendant employers).

Accordingly, this Court recommends finding that the allegations in plaintiff's Amended Complaint, admitted by entry of default, are sufficient to conclude that plaintiff's employment falls under the FLSA's protections.

## C.    NYLL

As with the FLSA, the NYLL covers certain activities or practices affecting employers and employees. The NYLL defines an employer as a "person, corporation, limited liability

company, or association employing any individual in any occupation, industry, trade, business or service." N.Y. Lab. Law § 190(3). An employee is defined as "any person employed for hire by an employer in any employment." *Id.* § 190(2). Because these definitions are similar to the FLSA's definitions, "courts use the same tests to determine joint employment under both the NYLL and the FLSA." *Khan v. Nyrene, Inc.*, No. 18-CV-557, 2020 WL 1931282, at *5 (E.D.N.Y. Mar. 11, 2020), *report and recommendation adopted*, 2020 WL 1929066 (E.D.N.Y. Apr. 21, 2020).

As stated above, this Court finds that plaintiff was jointly employed by the individual defendants under the FLSA, and, therefore, this Court applies the same standards to recommend finding that plaintiff was jointly employed by defendants under the NYLL.[5] *See Rodriguez v. Almighty Cleaning, Inc*., 784 F. Supp. 2d 114, 128 (E.D.N.Y. 2011) ("Courts in this circuit have held that the same analysis applies when determining whether defendants are jointly liable as employers under the FLSA and the NYLL.") (collecting cases).

## III.    Relief

A party's default "is not considered an admission of damages." *Greyhound*, 973 F.2d at 158 (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)). Accordingly, "[i]f the defaulted complaint suffices to establish liability, the court must conduct an inquiry sufficient to establish damages to a 'reasonable certainty.'" *Gunawan v. Sake Sushi Restaurant*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d

---

[5] As the Court finds that the individual defendants were jointly plaintiff's employers, each defendant is jointly and severally liable under the FLSA and the NYLL for any damages award made in plaintiff's favor. *See Mahoney v. Amekk Corp*., No. 14-CV-4131, 2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016), *report and recommendation adopted*, 2016 WL 6601445; *Armata v. Unique Cleaning Servs., LLC*, No. 13-CV-3625, 2015 WL 12645527, at *4 (E.D.N.Y. Aug. 27, 2015).

Cir. 1999)).  A court may make this determination based upon evidence presented at a hearing or

upon a review of detailed affidavits and documentary evidence.  *See* Fed. R. Civ. P. 55(b)(2);

*Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991).

    **A.**    **Unpaid Wages Due**

    "Under both the FLSA and NYLL, an employer is required to maintain records of the

wages, hours, and persons employed by him [or her]."  *Lu Nan Fan v. Jenny & Richard's Inc.*,

No. 19-CV-6963, 2019 WL 1549033, at *9 (E.D.N.Y. Feb. 22, 2019) (internal quotations and

citation omitted), *report and recommendation adopted*, 2019 WL 1547256 (E.D.N.Y. Apr. 9,

2019).  Where, as here, defaulting defendants fail to produce the requisite records, a plaintiff's

sworn statements "containing information as to hours worked and rates of pay based on

estimation and recollection, even if the information provided is general and not detailed, is

considered a sufficient basis for the determination of damages in this context."  *Nikolaeva v.*

*Home Attendant Servs. of Hyde Park*, No. 15-CV-6977, 2017 WL 3491964, at *3 (E.D.N.Y. July

19, 2017) (internal quotations and citation omitted), *report and recommendation adopted*, 2017

WL 3493136 (E.D.N.Y. Aug. 14, 2017); *see also Herrera*, 2015 WL 1529653, at *8.

"Nevertheless, the Court must ensure that plaintiff's approximations and estimates are reasonable

and appropriate."  *Lu Nan Fan*, 2019 WL 1549033, at *9.

    Plaintiff submitted her own affidavit, along with a memorandum of law by her attorneys,

describing her dates of employment along with hours worked and wages per week.  *See* Pl.'s

Aff., Dkt. 31-9 at ECF pages 1–12; Default Mem., Dkt. 33.[6]  Plaintiff's counsel also submitted

exhibits in support of the instant motion, including a damages calculation spreadsheet.  *See* Dkt.

---

[6] References to the page numbers generated by the Court's electronic case filing system appear as "ECF page."

31-8 (hereafter, "Damages Calculation").  In light of defendants' default, plaintiff's evidence of damages stands uncontroverted, and, therefore, plaintiff provided a sufficient basis upon which to determine damages subject to the limitations discussed below as it relates to reimbursement for out-of-pocket expenses.

### 1.    Regular Wage

To calculate a plaintiff's minimum wage and overtime compensation, the Court must first determine the plaintiff's regular hourly wage rate.  *See Xin Long Lin v. New Fresca Tortillas, Inc.*, No. 18-CV-3246, 2019 WL 3716199, at *3 (E.D.N.Y. May 1, 2019), *report and recommendation adopted*, 2019 WL 3714600 (E.D.N.Y. May 28, 2019); *Santillan v. Henao*, 822 F. Supp. 2d 284, 295 (E.D.N.Y. 2011).  Under the FLSA, the regular rate is defined "as the hourly rate actually paid the employee for the normal, nonovertime workweek for which he [or she] is employed."  29 C.F.R. § 778.108.

Because plaintiff was compensated on a weekly basis, the regular hourly rate is calculated by "dividing the salary by the number of hours which the salary is intended to compensate."  *Id.* § 778.113(a).  "There is a rebuttable presumption that an employer's payment of a weekly salary represents compensation for the first 40 hours of an employee's work-week; the burden is on the employer to rebut this presumption with evidence that the employer and employee had an agreement that the employee's weekly compensation would cover a different number of hours."  *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 385 (E.D.N.Y. 2012) (quoting *Jiao v. Shi Ya Chen*, No. 03-CV-165, 2007 WL 4944767, at *13 (S.D.N.Y. Mar. 30, 2007)); *see also Perez Garcia v. Hirakegoma Inc.*, No. 17-CV-7608, 2020 WL 1130765, at *8 (S.D.N.Y. Mar. 9, 2020) ("The FLSA and the NYLL carry a rebuttable presumption that a weekly salary covers only the first forty hours, unless the parties have an

alternate agreement.") (quoting *Pinovi v. FSS Enters., Inc.*, No. 13-CV-2800, 2015 WL 4126872, at *4 (S.D.N.Y. July 8, 2015)).

Here, plaintiff alleges she was only paid for her first four weeks of work in the amounts displayed below.  Plaintiff received no payment for any work completed after September 9, 2020.  Pl.'s Aff. ¶¶ 42–43.

| Dates | Hours Worked | Payment | Regular Wage |
|---|---|---|---|
| August 17, 2020 – August 23, 2020 | 101.67 (Pl.'s Aff. ¶¶ 8–10) | $400 (Pl.'s Aff. ¶¶ 37–38) | $3.93/hour |
| August 24, 2020 – August 30, 2020 | 105 (Pl.'s Aff. ¶ 10) | $600 (Pl.'s Aff. ¶ 39) | $5.71/hour |
| August 31, 2020 – September 6, 2020 | 90 (Pl.'s Aff. ¶¶ 10–11) | $500 (Pl.'s Aff. ¶ 40) | $5.56/hour |
| September 7, 2020 – September 13, 2020 | 45 (Pl.'s Aff. ¶¶ 10–11) | $300 (Pl.'s Aff. ¶ 41) | $6.67/hour |

### 2.    Unpaid Minimum Wages

Both the FLSA and the NYLL require employers to pay employees at least a minimum hourly rate for every hour that they work.  *See* 29 U.S.C. § 206(a); N.Y. Lab. Law § 652(1). "Although a plaintiff may be 'entitled to recover unpaid minimum wages and overtime pay under both the FLSA and the NYLL, he or she may not recover twice.'"  *Gonzalez Mercedes v. Tito Transmission Corp.*, No. 15-CV-1170, 2018 WL 7291452, at *5 (S.D.N.Y. Dec. 6, 2018) (quoting *Cao v. Wu Liang Ye Lexington Rest., Inc.*, No. 08-CV-3725, 2010 WL 4159391, at *3 (S.D.N.Y. Sept. 30, 2010)), *report and recommendation adopted*, 2019 WL 102007 (S.D.N.Y. Jan. 4, 2019).  "Where a plaintiff is entitled to damages under both federal and state wage law, a plaintiff may recover under the statute which provides the greatest amount of damages."

14

*Santana v. Latino Express Rests., Inc.*, 198 F. Supp. 3d 285, 294 (S.D.N.Y. 2016) (citation omitted).

At all relevant times, the FLSA required defendants to pay plaintiff a minimum hourly wage of $7.25.  *See* 29 U.S.C. § 206(a)(1)(C).  In contrast, the applicable minimum wage under the NYLL for a New York City employer with ten or fewer employees during the relevant period was $15 per hour after December 31, 2019.[7]  *See* N.Y. Lab. Law § 652(1)(a)(ii).  Given that the minimum wage under NYLL is higher than that of the FLSA, this Court analyzes plaintiff's minimum wage entitlement under the NYLL.

Here, plaintiff claims she was deprived of a minimum wage.  As discussed above, plaintiff performed work for defendants after December 31, 2019; thus, her wage should have been $15 per hour under the NYLL.  At all times that plaintiff was compensated for her work, she was paid below the minimum wage.  *See* Section III.A.1, above.  Based on plaintiff's sworn statements in her affidavit, Dkt. 31-9, the Court calculated that plaintiff worked a total of approximately **1,127.67** hours for defendants, but she was paid only $1,800 for the entirety of her employment.  Thus, this Court recommends awarding plaintiff **$15,115** ((1,127.67 x $15) – $1,800) in unpaid minimum wages for all hours worked.

---

[7] The rates listed apply to "small employers," or those employers with "ten or less employees." N.Y. Lab. Law § 652(1)(a)(ii).  "In the absence of information as to the size of an employer's workforce, courts apply the rate for small employers."  *Ortiz v. Red Hook Deli & Grocery 2015 Corp.*, No. 17-CV-7095, 2019 WL 4739047, at *7 n.6 (E.D.N.Y. June 12, 2019), *report and recommendation adopted*, 2019 WL 4741626 (E.D.N.Y. Sept. 26, 2019).  As plaintiff has not provided any information indicating whether the defendants were small or large employers, this Court applies the rates for small employers.

### 3.    Unpaid Overtime Compensation

Under the FLSA, an employer must pay an employee overtime compensation at 1.5 times the employee's regular rate of pay for each hour worked in excess of forty hours per week.  *See* 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.110(a).  The NYLL incorporates and restates the FLSA's requirements, and the analysis of overtime claims under the NYLL is generally the same as under the FLSA.  *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4; *see also Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (noting that the NYLL adopts the FLSA's definition of overtime into the NYLL).  "An employee's appropriate overtime rate is calculated by multiplying his regular hourly rate (or the minimum wage rate, if his regular hourly rate falls below the minimum wage) by one and one-half."  *Guerrero*, 2019 WL 4889591, at *8 (internal quotations and citation omitted).  As established above, plaintiff's regular rate fell below the minimum wage provided by New York law, and this Court has discretion to award overtime based on New York's higher minimum wage.  *See Hernandez v. Jrpac Inc.*, No. 14-CV-4176, 2016 WL 3248493, at *31 (S.D.N.Y. June 9, 2016) (awarding back wages under the NYLL rather than the FLSA because "[p]laintiffs' damages award under the NYLL necessarily will subsume their award under the FLSA, both because of the higher minimum wage that governed during certain periods and because of the longer period covered by the NYLL").

Plaintiff's overtime eligibility depends on whether and when she resided with defendants.  The FLSA exempts from its overtime provisions "any employee who is employed in domestic service in a household and who resides in such household."  29 U.S.C. § 213(b)(21); *Manliguez v. Joseph*, 226 F. Supp. 2d 377, 388 (E.D.N.Y. 2002) (finding that plaintiff was considered a domestic servant and, therefore, not entitled to overtime compensation under the FLSA);

*Almeida v. Aguinaga*, 456 F. Supp. 2d 505, 508 (S.D.N.Y. 2006) (same). Plaintiff became a live-in domestic service worker beginning November 1, 2020 and, therefore, no longer qualified for federal overtime pay thereafter.[8]

While federal law exempts plaintiff's employment after November 1, 2020, New York law separately provides for overtime for employees not covered by the FLSA. *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2. "[E]mployees subject to FLSA exemptions . . . are nonetheless entitled to overtime compensation at a rate of one and one-half times the minimum wage" under the NYLL. *Hayward v. IBI Armored Servs., Inc.*, 954 F.3d 573, 575–76 (2d Cir. 2020); *see also Shillingford v. Astra Home Care, Inc.*, 293 F. Supp. 3d 401, 413 (S.D.N.Y. 2018). Thus, "unlike [under] the FLSA, resident domestic workers are entitled to overtime pay under the New York Labor Law." *Oak-Jin Oh v. Soo Bok Choi*, No. 11-CV-3764, 2016 WL 11430442, at *10 (E.D.N.Y. Feb. 29, 2016), *report and recommendation adopted*, Order Granting Motion for Default J. dated March 30, 2016, Dkt. 154. Further, New York law provides that a residential employee—*i.e.*, "one who lives on the premises of the employer"—is entitled to overtime for hours worked beyond 44 in a week. *See* N.Y. Comp. Codes R. & Regs. tit. 12, §§ 142-2.1(b), 142-2.2; *Shillingford*, 293 F. Supp. 3d at 413.

Accordingly, plaintiff is entitled to overtime pay for the weeks she worked beyond 40 hours before November 1, 2020. After November 1, 2020, she is entitled to overtime compensation for weeks she worked more than 44 hours while residing with defendants. Here,

---

[8] Domestic service workers include employees conducting services in a private home such as, among other things, "babysitters, cooks, waiters, butlers, valets, maids, [and] housekeepers." 29 C.F.R. § 552.3. Plaintiff alleges that starting November 1, 2020, she lived with the defendants until moving out of their residence on February 24, 2021. Pl.'s Aff. ¶¶ 4, 33. The services she provided were domestic in nature, including cooking, cleaning, and grocery shopping. *See* Pl.'s Aff. ¶¶ 23, 25, 29.

plaintiff sufficiently demonstrates that defendants did not pay her overtime compensation where required. Based on plaintiff's allegations detailed below, she is entitled to **$3,245** in unpaid overtime compensation.

| Dates[9] | Employment Type | Total Hours Worked | Overtime Owed[10] |
|---|---|---|---|
| August 17, 2020 – August 23, 2020 | Non-residential | 101.67 (Pl.'s Aff. ¶¶ 8–10) | $462.50 (101.67-40) x 7.50 |
| August 23, 2020 – August 30, 2020 | Non-residential | 105 (Pl.'s Aff. ¶ 10) | $487.50 (105-40) x 7.50 |
| August 31, 2020 – September 6, 2020 | Non-residential | 90 (Pl.'s Aff. ¶¶ 10–11) | $375 (90-40) x 7.50 |
| September 7, 2020 – September 13, 2020 | Non-residential | 45 (Pl.'s Aff. ¶¶ 10–11) | $37.50 (45-40) x 7.50 |
| September 28, 2020 – October 4, 2020 | Non-residential | 109.5 (Pl.'s Aff. ¶¶ 15–16) | $521.25 (109.5-40) x 7.50 |
| November 2, 2020 – November 8, 2020 | Residential | 75 (Pl.'s Aff. ¶¶ 22–23) | $232.50 (75-44) x 7.50 |
| November 9, 2020 – November 15, 2020 | Residential | 75 (Pl.'s Aff. ¶¶ 22–23) | $232.50 (75-44) x 7.50 |
| November 16, 2020 – November 22, 2020 | Residential | 75 (Pl.'s Aff. ¶¶ 22–23) | $232.50 (75-44) x 7.50 |
| November 23, 2020 – November 29, 2020 | Residential | 75 (Pl.'s Aff. ¶¶ 22–23) | $232.50 (75-44) x 7.50 |
| November 30, 2020 – December 6, 2020 | Residential | 66 (Pl.'s Aff. ¶¶ 22–25) | $165 (66-44) x 7.50 |
| December 7, 2020 – December 13, 2020 | Residential | 60 (Pl.'s Aff. ¶¶ 24–25) | $120 (60-44) x 7.50 |
| December 14, 2020 – December 20, 2020 | Residential | 60 (Pl.'s Aff. ¶¶ 24–25) | $120 (60-44) x 7.50 |
| January 18, 2021 – January 24, 2021 | Residential | 47.5 (Pl.'s Aff. ¶¶ 28–29) | $26.25 (47.5-44) x 7.50 |
| | | | **Total: $3,245.00** |

---

[9] These dates reflect only the weeks in which plaintiff alleges she worked either (1) more than 40 hours as a non-residential employee or (2) more than 44 hours as a residential employee.

[10] Because the Court recommends awarding unpaid minimum wages for all hours worked—not just the first 40 hours of each week—the Court has calculated overtime wages owed on top of that sum. In other words, in the relevant weeks, the Court has already accounted for the first $15 for all hours worked beyond 40 or 44 and adds an additional $7.50 per hour (one-half the minimum wage) to the ultimate damages award. *See Oak-Jin Oh*, 2016 WL 11430442, at *13

### 4.    Spread of Hours Compensation

Plaintiff seeks damages pursuant to NYLL's spread of hours provision.  Troy Decl. ¶ 1,

Dkt. 31.  Pursuant to NYLL regulations, "an employee shall receive one additional hour of pay at

the basic minimum hourly rate" on each day the employee works in excess of ten hours.  N.Y.

Comp. Codes R. & Regs. tit. 12, § 142-2.4; *see also Euceda v. Preesha Operating Corp.*, No. 14-

CV-3143, 2016 WL 8711446, at *5 (E.D.N.Y. July 13, 2016), *report and recommendation

adopted*, 2016 WL 8711193 (E.D.N.Y. Sept. 30, 2016).  Spread of hours is defined as "the

interval between the beginning and end of an employee's workday" and "includes working time

plus time off for meals plus intervals off duty."  N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6.

Plaintiff's uncontroverted allegations establish that she worked beyond ten hours per day

during several phases of her employment, as set forth below:

| Dates | Hours Per Day | Number of Days (not including days off) |
|---|---|---|
| August 17, 2020 – August 18, 2020 | 13.33 (Pl.'s Aff. ¶ 8) | 2 |
| August 19, 2020 – September 9, 2020 | 15 (Pl.'s Aff. ¶ 10) | 21 (one day off) |
| September 28, 2020 – October 4, 2020 | 14+ (Pl.'s Aff. ¶ 15) | 7 |
| October 7, 10, and 12, 2020 | 15 (Pl.'s Aff. ¶ 19) | 3 |
| October 30, 2020 – December 1, 2020 | 15 (Pl.'s Aff. ¶ 22) | 23 |
| December 2, 2020 – December 23, 2020 | 12 (Pl.'s Aff. ¶ 24) | 16 |
| | | **Total: 72 days** |

---

(awarding unpaid overtime by calculating one-half of the New York minimum wage for every
hour worked in excess of 44 hours in a week).

Plaintiff is entitled to an additional $15 for each of those days, and, accordingly, the Court recommends awarding **$1,080** (72 x $15) in unpaid spread of hours compensation.

### B.    Claim for Unreimbursed Expenses and Unlawful Kickback Violation

Plaintiff seeks to recover $4,893[11] for unreimbursed out-of-pocket expenses and for alleged "kickback" violations.  *See* Am. Compl. ¶¶ 4, 71–73, 113–21 (Count VIII.  Breach of Express and Implied Contract for Reimbursement of all Costs and Expenses of Domestic Spending); 122–25 (Count IX.  New York State Unlawful Kick Back Violation); Default Mem., Dkt. 32 at ECF pages 11–12; Pl.'s Aff. ¶¶ 45–47.  Plaintiff itemized her alleged out-of-pocket expenses in her Damages Calculation.  *See* Dkt. 31-8 at ECF page 6 (listing unreimbursed expenses); Pl.'s Aff. ¶¶ 45–47 (stating that plaintiff paid "out-of-pocket expenses" that included "paying for bills, services, compensating Defendants['] friends for favors and products on behalf of the Defendants.").  Plaintiff alleges that her out-of-pocket expenses reflect purchases of items or services (in connection with the Count VIII breach of contract claim) or payments made to "multiple associates of Defendants" (in connection with the Count IX unlawful kickback claim).

With respect to the breach of contract claim, plaintiff seeks reimbursement of "out-of-pocket" expenses for bills, services, food delivery, cleaning supplies, and Lyft rides.  Pl.'s Aff. ¶ 46; Am. Compl. ¶¶ 113–21.  Plaintiff alleges that "[d]efendants on multiple occasions, confirmed verbally and via text message that they would reimburse Plaintiff for the supplies necessary for the apartment."  Am. Compl. ¶ 118.  Plaintiff's allegations that she incurred unreimbursed expenses on behalf of defendants are deemed admitted in light of defendants' default.  The Court

---

[11] In her Amended Complaint, plaintiff initially sought reimbursement for $7,434.35 in out-of-pocket expenses.  Am. Compl. ¶ 73.  However, in her motion for default judgment, plaintiff revised the total amount of expenses to $4,893.  *See* Pl.'s Aff. ¶ 47; Damages Calculation, Dkt. 31-8 at ECF page 6.

finds that the parties reached an agreement for defendants to reimburse plaintiff for out-of-pocket expenses, and that the agreement was mutual and for consideration. *See Suarez Castaneda*, 2019 WL 5694118, at *12 (awarding out-of-pocket expenses to plaintiff who "purchased cleaning supplies for [d]efendants' customers at their own expense" where "[d]efendants [orally] promised [p]laintiffs that they would reimburse those costs"). Further, plaintiff has established that defendants breached the agreement by failing to reimburse plaintiff. Although plaintiff provides little evidence in support of her claim for unreimbursed out-of-pocket expenses, the Court identifies $286 worth of reimbursable expenses that appear to reflect payment for "bills," "services," "food delivery, cleaning supplies and Lyft rides"[12] (Pl.'s Aff. ¶ 46; Am. Compl. ¶ 114), as follows: $42 (Queens Mall), $25 (Oxyclean), $23 (Laundry), $42 (Doordash), $40 (Doordash), $19 (Doordash), $13 (Uber), $13 (Uber), $25 (Doctors appointment), $26 (Sariling Atin), $9 (Sariling Atin), and $9 (Party). *See* Damages Calculation, Dkt. 31-8 at ECF page 6. This Court recommends awarding plaintiff **$286** in unreimbursed out-of-pocket expenses. *See Suarez Castaneda*, 2019 WL 5694118, at *12 (awarding out-of-pocket expenses).

With respect to the remaining out-of-pocket expenses of $4,607 ($4,893-$286), the Court recommends denying reimbursement for these expenses either because the Court is unable to ascertain the nature of the charge,[13] or plaintiff used the funds to pay "Defendants['] friends for favors" in connection with plaintiff's kickback claim (NYLL § 198-b). Pl.'s Aff. ¶ 46; Am. Compl. ¶ 123.

---

[12] Although plaintiff refers to "Lyft" rides in her Amended Complaint and in her motion papers, in her Damages Calculation, plaintiff refers to "Uber" instead of "Lyft." The Court recognizes that both are ride-share companies.

[13] The Court is unable to determine the nature of the following charges: November 1, 2020 expense of $376 for "17026376002"; and $1,000 for "Investment." Plaintiff fails to provide any further information or documentation in support of reimbursement for these expenses and, therefore, the Court recommends denying reimbursement for these expenses.

Plaintiff seeks reimbursement for payments plaintiff made to "associates of Defendants" in violation of the kickback provision of NYLL § 198-b.[14]  Am. Compl. ¶ 123 ("Defendants intentionally required Plaintiff to transfer money to multiple associates of Defendants. . . ."). This Court recommends denying recovery as to plaintiff's claims for reimbursement under NYLL § 198-b, Am. Compl. ¶¶ 122–25 (alleging violations of NYLL § 198-b), because no private right of action exists to enforce NYLL § 198-b.  *See Konkur v. Utica Acad. of Sci. Charter Sch*., 38 N.Y.3d 38, 41 (2022).

In *Konkur*, the New York Court of Appeals reviewed whether a private or implied right of action exists to enforce NYLL § 198-b.  Section 198-b of the NYLL prohibits employers from requiring employees to pay kickbacks out of their paychecks.  The statute, however, does not expressly provide for a private right of action.  The Court in *Konkur* found that there is no implied private right of action to enforce the statute either, finding that "the legislature chose to provide for it in other provisions in this statutory scheme, but not for [section 198-b]."  *Konkur*, 38 N.Y.3d 38 at 44.  In light of the *Konkur*'s holding that no private right of action exists to enforce NYLL § 198-b, plaintiff cannot recover damages in this action for the out-of-pocket expenses made allegedly in violation of NYLL § 198-b.

### C.    Statutory Damages Under the Wage Theft Prevention Act

Section 195(1)(a) of the NYLL requires employers to provide employees at the time of hiring with a wage notice containing, among other things, the rate of pay, the basis thereof, and the pay schedule.  After February 27, 2015, violations of section 195(1) carry damages of $50 per workday, up to a maximum of $5,000.  *See* N.Y. Lab. Law § 198(1-b).  Further, section

---

[14] The Court has identified the following payments that plaintiff presumably made to defendants' friends in violation of NYLL § 198-b:  $2,000 (to Marissa); $120 (Zelle to Shanell); $126 (Zelle to Kristel); $485 (to Candy); and $500 (Daylen).  Pl.'s Aff. ¶¶ 74–75, 77–79.

195(3) of the NYLL requires employers to furnish employees with "a statement with every payment of wages, listing information about the rate and basis of pay, any allowances and deductions, and the employer's identity and contact details." *Rojas v. Splendor Landscape Designs Ltd.*, 268 F. Supp. 3d 405, 412 (E.D.N.Y. 2017) (internal quotations and citation omitted). After February 27, 2015, violations of section 195(3) carry damages of $250 per workday, up to a maximum of $5,000. *See* N.Y. Lab. Law § 198(1-d).[15]

Here, plaintiff alleges she never received a wage notice or wage statements from defendants at any point throughout the course of her employment. *See* Pl.'s Aff. ¶ 49; Am. Compl. ¶ 107. Because plaintiff worked without a wage notice for more than 100 days and without a wage statement for more than 20 days, and these violations occurred after February 27, 2015, this Court recommends awarding plaintiff the maximum statutory damages of $5,000 for violations of NYLL § 195(1), and $5,000 for violations of NYLL § 195(3), for a total of **$10,000**. *See Sarmiento Perez*, 2020 WL 1364908, at *6; *Jianmin Jin v. Shanghai Original, Inc.*, No. 16-CV-5633, 2019 WL 3244187, at *5 (E.D.N.Y. July 19, 2019).

### D.    Liquidated Damages

The FLSA and the NYLL both allow for liquidated damages awards equaling 100 percent of the wages due. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1). Under the FLSA, a district court is "generally required" to award a plaintiff liquidated damages equal in amount to the unpaid minimum and/or overtime wages, *Barfield*, 537 F.3d at 150; however, courts may, in their discretion, decline to award liquidated damages where employers "show[] to the

---

[15] Prior to February 27, 2015, employees were entitled to recover statutory damages for wage notice violations of $50 per work week, not to exceed $2,500, and for wage statement violations of $100 per work week, not to exceed $2,500. *See Cazarez v. Atl. Farm & Food Inc.*, No. 15-CV-2666, 2017 WL 3701687, at *6 (E.D.N.Y. May 31, 2017), *report and recommendation adopted*, 2017 WL 3701479 (E.D.N.Y. Aug. 25, 2017).

satisfaction of the court" that they acted in good faith and reasonably believed they did not

violate the FLSA.  *See* 29 U.S.C. § 260.  Similarly, the NYLL permits employees to recover "an

additional amount as liquidated damages equal to [100] percent of the total amount of the wages

found to be due . . . unless the employer proves a good faith basis for believing that its

underpayment of wages was in compliance with the law."  N.Y. Lab. Law § 198(1-a).

Because "there are no meaningful differences" between the FLSA and NYLL liquidated

damages provisions, the Second Circuit has interpreted the two statutes "as not allowing

duplicative liquidated damages for the same course of conduct."  *Rana v. Islam*, 887 F.3d 118,

123 (2d Cir. 2018).  "In light of the principle that the law providing the greatest recovery will

govern, [p]laintiff may be awarded liquidated damages pursuant to the NYLL or the FLSA."

*Jian Hua Li v. Chang Lung Grp. Inc.*, No. 16-CV-6722, 2020 WL 1694356, at *14 (E.D.N.Y.

Apr. 7, 2020) (internal quotations and citation omitted).  However, "[l]iquidated damages are not

available for violations of the NYLL wage notice and statement provisions."  *Id.*; *see also* N.Y.

Lab. Law § 198(1-a), (1-d).

Here, defendants, having defaulted, have failed to make a showing of good faith.  *See Lu

Nan Fan*, 2019 WL 1549033, at *11.  As this Court has calculated plaintiff's damages according

to the NYLL, plaintiff is entitled to 100 percent of her damages for minimum wages (**$15,115**),

and overtime wages (**$3,245**) under the NYLL.  Accordingly, this Court recommends awarding

plaintiff **$18,360** in liquidated damages.

### E.    Pre- and Post-Judgment Interest

Plaintiff additionally requests pre- and post-judgment interest pursuant to N.Y. C.P.L.R.

§ 5001.  *See* Troy Decl. ¶ 1, Dkt. 31.  Unlike the FLSA, New York law "provides that a

successful plaintiff should receive both liquidated damages and prejudgment interest."  *Nam v.*

24

*Ichiba Inc.*, No. 19-CV-1222, 2021 WL 878743, at \*9 (E.D.N.Y. Mar. 9, 2021). "[T]o avoid double recovery, courts calculate pre-judgment interest only on the compensatory damages awarded under the NYLL, not on the liquidated damages." *Singh v. All Empire Bldg. Contractors, Inc.*, No. CV-20-2736, 2021 WL 3055858, at \*7 (E.D.N.Y. June 30, 2021), *report and recommendation adopted*, 2021 WL 3054963 (E.D.N.Y. July 20, 2021). Accordingly, plaintiff is entitled to pre-judgment interest on her unpaid minimum wage, overtime and spread-of-hours claims, which total **$19,440** ($15,115 unpaid minimum wage + $3,245 unpaid overtime compensation + $1,080 spread-of-hours premium) at a rate of nine percent per annum. *See* N.Y. C.P.L.R. § 5004.

Where damages were incurred at various times, pre-judgment interest may be calculated from a single reasonable intermediate date. *See* N.Y. C.P.L.R. §§ 5001(b). Courts generally find that the midpoint of a plaintiff's employment to be a reasonable intermediate date. *See Singh*, 2021 WL 3055858, at \*7; *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 49 (E.D.N.Y. 2015). Here, the midpoint of plaintiff's employment (between August 17, 2020 and February 24, 2021) was approximately November 20, 2020. Therefore, this Court recommends awarding pre-judgment interest on plaintiff's compensatory damages from November 20, 2020 to the date of this Court's judgment at a rate of **$4.79** per day (($19,440 x .09)/365).

Likewise, post-judgment interest must be applied to "any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961; *see also Singh*, 2021 WL 3055858, at \*8. Therefore, this Court recommends awarding plaintiff post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, using the rate set forth in section 1961. *See Fermin*, 93 F. Supp. 3d at 53.

F.    **Attorney's Fees and Costs**

As the prevailing party, plaintiff is entitled to recover reasonable attorney's fees and costs under both the FLSA and NYLL.  *See* 29 U.S.C. § 216(b), N.Y. Lab. Law §§ 198, 663(1).  "The party seeking reimbursement of attorney's fees bears the burden of proving the reasonableness and the necessity of the hours spent and rates charged."  *Fermin*, 93 F. Supp. 3d at 51 (citing *N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)).  A fee application must be supported by "contemporaneous time records" that "specify, for each attorney, the date, the hours expended, and the nature of the work done."  *Rodriguez v. Eden Rose, Corp.*, No. 22-CV-500, 2023 WL 2969311, at *13 (E.D.N.Y. Mar. 3, 2023) (citing *Carey*, 711 F.2d at 1148).

Plaintiff filed her motion for attorney's fees, *see* Dkt. 33, and accompanying time records, *see* Dkt. 34-1 ("Time Records"), seeking $28,362.90 in fees and costs.

1.    **Reasonably Expended Hours**

Courts determining a reasonable number of hours billed should "exclude excessive, redundant or otherwise unnecessary" time entries.  *Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999); *see also Wang v. XBB, Inc.*, No. 18-CV-7341, 2023 WL 2614143, at *7 (E.D.N.Y. Mar. 23, 2023) (Chen, J.) (reducing hours billed by 40 percent where time entries "reflect[ed] inefficiencies and excessive billing practices").  "Similarly, when tasks done by attorneys are considered administrative or more appropriately conducted by paralegals, then the rates should be adjusted accordingly."  *Bozdogan v. 23 Ludlam Fuel, Inc.*, No. 16-CV-1053, 2022 WL 17987044, at *4 (E.D.N.Y. Dec. 29, 2022); *see also Villarrubia v. La Hoguera Paisa Rest. & Bakery Corp.*, No. 18-CV-4929, 2020 WL 6430327, at *2 (E.D.N.Y. Oct. 9, 2020), *report and recommendation adopted*, 2020 WL 6415171 (E.D.N.Y. Nov. 2, 2020) (reducing

26

hours by 5 percent where partner performed administrative tasks such as "calling the courtroom deputy and filing affidavits of service").

Plaintiff seeks attorney's fees for 51.25 hours of work billed collectively by several individuals at Troy Law, PLLC, including John Troy (partner), Aaron Schweitzer (managing associate), Tiffany Troy (junior associate), and Preethi Kilaru (managing clerk). *See* Troy Fee Decl. ¶ 58, Dkt. 34. The work was performed over the course of approximately twelve months. *See* Time Records, Dkt. 34-1.

Upon reviewing counsel's contemporaneous time records, this Court finds a 15 percent reduction in hours billed is appropriate for this case. John Troy performed a number of administrative tasks, including filing documents on ECF and compiling invoices. *See* Time Records dated 6/11/2021 and 6/7/2022. "Although Troy is at liberty to decide how to use his time and manage his cases, the Court finds that it is not appropriate, for purposes of gauging the reasonable fee award, to assign partner-level billing rates to tasks that first- or second-year associates or, here, a non-lawyer could easily perform." *Wang*, 2023 WL 2614143, at *7 (internal quotations omitted). Additionally, the time records contain redundancies, reflecting several sets of meetings and rounds of revisions to the complaint. *See, e.g.*, Time Records dated 6/6/2021, 6/9/2021, and 6/11/2021.

Lastly, a 15 percent reduction would align this case with comparable FLSA default cases. *See Villarubia*, 2020 WL 6430327, at *2 (finding 33.68 hours over thirteen months reasonable); *Nam*, 2021 WL 878743, at *11 (finding 27.3 hours over fifteen months reasonable).

## 2.    Reasonable Hourly Rate

Courts determine the appropriate hourly rate by considering what a reasonable client would be willing to pay and by looking at the attorney's experience.  *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008).  Courts in this district have found that reasonable hourly rates for partners in wage and hour cases range from approximately $300 to $450.  *See Neri v. Abi Japanese Rest., Inc.*, No. 20-CV-581, 2022 WL 16755146, at *3 (E.D.N.Y. Sept. 15, 2022), *report and recommendation adopted*, 2022 WL 4596735 (E.D.N.Y. Sept. 30, 2022) (collecting recent cases).  As for other employees, reasonable rates have ranged from $200 to $400 for senior associates, $100 to $200 for junior associates, and $70 to $100 for paralegals.  *Ferrara v. Pro. Pavers Corp.*, No. 11-CV-1433, 2013 WL 1212816, at *2 (E.D.N.Y. Mar. 23, 2013).

The rates requested in plaintiff's attorney's fee application far exceed the reasonable rates in this district and should be reduced accordingly.  John Troy requests an hourly rate of $650, Aaron Schweitzer an hourly rate of $400, Tiffany Troy an hourly rate of $200 or $250,[16] and Preethi Kilaru an hourly rate of $200.  Troy Fee Decl. ¶ 58.[17]  Counsel's justifications for

---

[16] Counsel cites both billing rates in their motion for fees.  In plaintiff's counsel's declaration and supporting memorandum of law, counsel seeks an award of fees on behalf of attorney Tiffany Troy at the rate of *$200*.  Troy Fee Decl. ¶ 54, Dkt. 34 at ECF page 26; Fee Mem., Dkt. 35 at ECF page 9 ($200). However, in the same declaration prepared by counsel, he also seeks fees for Ms. Troy at the rate of *$250*.  Troy Fee Decl. ¶ 58, Dkt. 34 at ECF page 26 and ECF page 27 (summary table).  As discussed further, the Court need not address this discrepancy because it recommends a rate lower than both proposed rates.

[17] In plaintiff's counsel's memorandum of law in support of an award of attorney's fees, plaintiff's counsel seeks fees on behalf of Managing Associate George Byun a/k/a Kibun Byun ("Byun") at a rate of $350.  *See* Fee Mem., Dkt. 35 at ECF page 9.  However, the attached Time Records, Dkt. 34-1, do not reflect that Byun performed any work in this case.  Further, in counsel's declaration in support of his motion for fees, he makes no reference to Byun, nor provides any description of Byun's legal experience.  *See* Dkt. 34.  This Court does not recommend an award of fees for Byun in this case.

awarding exceptionally high fees, *see* Dkt. 35 at ECF pages 7–10, have been presented in this district before and, once again, fail to persuade the Court. *See Wang*, 2023 WL 2614143, at *3–*4, *8 (distinguishing cases where Troy received rates above $500 and warning the firm of potential sanctions for future misleading fee applications).

The Court instead recommends awarding rates in line with reasonable rates in this district. John Troy and Aaron Schweitzer have extensive experience in FLSA and NYLL litigation. Troy is a partner at Troy Law, PLLC and received his LLM from Dickinson School of Law in 1985. Troy Fee Decl. ¶ 16. He is the attorney of record in at least 166 wage-and-hour cases in the Eastern District of New York, *id.* ¶ 20, and 168 in the Southern District, *id.* ¶ 21. Although Schweitzer has only four years of experience, he has litigated 188 wage-and-hour cases. *Id.* ¶ 34. This Court finds that Mr. Troy's and Schweitzer's experience warrants the high end of the typical rates in this district and, accordingly, recommends awarding an hourly rate of **$400** and **$250**, respectively. *See, e.g.*, *Wang*, 2023 WL 2614143, at *4 (awarding Troy $400 and Schweitzer $200); *Chen v. Marvel Food Servs. LLC*, No. 15-CV-6206, 2022 WL 4226098, at *5 (E.D.N.Y. Sept. 9, 2022) (awarding Troy $450 and Schweitzer $300, but awarding fees only to attorneys of record).

Similarly, as to Tiffany Troy and Preethi Kilaru, this Court recommends awarding rates comparable to the awards in recent decisions. *See Wang*, 2023 WL 2614143, at *4 (awarding $75 to Kilaru and $0 to Ms. Troy because she performed only translation work); *Lin v. Joe Japanese Buffet Rest. Inc.*, No. 17-CV-3435, 2022 WL 2718584, at *6 (E.D.N.Y. June 7, 2022), *report and recommendation adopted*, 2022 WL 2716487 (E.D.N.Y. July 13, 2022) (awarding Ms. Troy $200 and Kilaru $100). Based on these authorities, and because the time entries for

Ms. Troy reflect similarly administrative or paralegal work as those for Kilaru, this Court finds

that a rate of **$150** per hour is reasonable as to both Ms. Troy and Kilaru.

|  | Requested hourly rate | Recommended Hourly Rate | Hours Worked | Hours worked reduced by 15% | Reduced hourly rate x hours worked reduced by 15% |
|---|---|---|---|---|---|
| John Troy | $650 | $400 | 36.05 | 30.64 | $12,256 (400 x 30.64) |
| Aaron Schweitzer | $400 | $250 | 3.08 | 2.62 | $655 (250 x 2.62) |
| Tiffany Troy | $200/$250 | $150 | 6.80 | 5.78 | $867 (150 x 5.78) |
| Preethi Kilaru | $200 | $150 | 5.30 | 4.51 | $675.50 (150 x 4.51) |
|  |  |  | Total hours: 51.23[18] |  | **Total fees after reductions: $14,453.50** |

Accordingly, this Court recommends awarding attorney's fees in the amount of

**$14,453.50**. Plaintiff also requests costs in the amount of $938.40 and submitted accompanying

itemized expenses. *See* Time Records, Dkt. 34-1 at ECF page 3. The Court finds these costs

reasonable and recommends awarding **$938.40** in costs, resulting in a total award of **$15,391.90**

in attorney's fees and costs.

### Conclusion

For the reasons set forth above, this Court respectfully recommends:

(1) granting plaintiff's motion for a default judgment against defendants, jointly and

severally, and entering judgment against defendants Rhodes and Ocampo;

---

[18] Plaintiff's counsel seeks compensation for 51.25 hours. Troy Fee Decl. ¶ 58, Dkt. 34 at ECF page 26. However, the individual hours worked by each of plaintiff's attorneys totals 51.23 hours, not 51.25 (36.05 + 3.08 + 6.80 + 5.30). Troy Fee Decl. (summary table), Dkt. 34 at ECF page 26.

(2) awarding plaintiff damages totaling **$48,086**, consisting of **$15,115** in unpaid

minimum wages for all hours worked, **$3,245** in unpaid overtime compensation, **$1,080** in

unpaid spread of hours compensation, **$286** in unreimbursed expenses, **$10,000** in statutory

damages, and **$18,360** in liquidated damages;

(3) awarding plaintiff pre- and post-judgment interest as described above; and

(4) granting in part plaintiff's motion for attorney's fees and costs and awarding

**$14,453.50** in attorney's fees and **$938.40** in costs for a total award of **$15,391.90** in attorney's

fees and costs.

A copy of this Report and Recommendation is being electronically served on counsel.

Further, the Court directs plaintiff's counsel to serve a copy of this Report and Recommendation

by overnight mail and first-class mail to defendants and to file proof of service on ECF by

**September 12, 2023**.  Any objections to the recommendations made in this Report must be filed

with the Honorable Pamela K. Chen within 14 days after the filing of this Report and

Recommendation and, in any event, on or before **September 22, 2023**.  *See* 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to file timely objections may waive the right to

appeal the District Court's order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Small*

*v. Sec'y of Health & Human Servs*., 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*) (discussing

waiver under the former ten-day limit).

The Clerk is requested to enter this Report and Recommendation into the ECF system.

**SO ORDERED**

Dated: Brooklyn, New York
        September 8, 2023

s/ James R. Cho
James R. Cho
United States Magistrate Judge

31